Laveta BAKER, a/k/a Bambi Leigh, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17991.

Court of Criminal Appeals of Oklahoma.

May 23, 1973.

C. W. Pate, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Laveta Baker, a/k/a Bambi Leigh, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. Crm–72–799, for the offense of Outraging Public Decency, her punishment was fixed at nine (9) months in the county jail and a fine of five hundred dollars ($500) and from said judgment and sentence a timely appeal has been perfected to this Court.

Because of the propositions asserted, we do not deem it necessary to recite a detailed statement of facts. Suffice it to say that on July 19, 1972, at approximately 12:45 p. m. the defendant, clad in a bikini, was observed standing at the corner of 5th and Cheyenne in downtown Tulsa holding a placard protesting air pollution. She handed the placard to a bystander, removed the top of her bikini and proceeded west across Cheyenne Avenue bare breasted. Upon reaching the northwest corner of 5th and Cheyenne, the defendant was arrested by an assistant district attorney for Tulsa County.

The State presented five witnesses, each of whom testified in substance that they were shocked by the defendant's actions and that, in their opinion, public decency was outraged. Six photographs were taken at the scene and introduced.

The defendant, an exotic dancer, testified that her purpose was to stage a protest against air pollution. She testified that she picked out the most populated area in Tulsa at that particular hour trying to attract attention to air pollution. On cross-examination she denied stating previously that she was going to do that again in Tulsa.

Johnny Walker, a newspaper photographer, testified that he was assigned to cover a report that some girl was going to walk nude in downtown Tulsa. He was present at the scene and took certain photographs of the activities. He testified that there was no particular disturbance and that most of the men present were laughing. He personally was not outraged by the defendant appearing topless.

Steve Clark and Les Williams were called in rebuttal and testified that they heard the defendant make a statement during one of the recesses to the effect that "Hell, I'll do it again." (Tr. 19) On cross-examination both witnesses testified that they did not hear what the defendant stated she was going to do again.

The first proposition asserts that the court erred in refusing to grant a mistrial to the defendant, in requiring her to proceed after being charged with perjury and taken into custody by the sheriff in the presence of the jury.[1] The record adduces that following the testimony of the State's rebuttal witnesses, the assistant district attorney in the presence of the jury stated:

"At this time I'd ask that the deputy sheriff take this defendant into custody for the crime of perjury that she's committed right under oath. I asked her two times if she'd made any remarks like that, and she said she had not.

"Mr. Baker is here, and I ask that you have him take her into custody, and we'll file a charge of the crime of perjury against her at this time.

1. Perjury charge was filed on September 28, 1972, and defendant's demurrer to the evidence was sustained on October 30, 1972.

"MR. PATE: Your Honor, there has been no evidence of what she's been referring to in this—

"THE COURT: It is my knowledge the District Attorney has the discretion as to whom he wishes to file a criminal charge against.

"MR. HOPPER: That's correct.

"THE COURT: The District Attorney, by and through Mr. Hopper, who is an assistant district attorney, has advised me that he intends to do it, and he has indicated that he will; is that correct, Mr. Hopper?

"MR. HOPPER: Be filed in five minutes, Your Honor, five or ten minutes.

"I'd ask that she remain in the custody of Mr. Baker until that time.

"THE COURT: Would you gentlemen approach the Bench?

(A brief conference was held.)

"THE COURT: Mrs. West and gentlemen of the jury, the Court will call for a five-minute to ten-minute recess at this time. The admonishments given to you are in particular effect at this time. You are not to discuss this case among yourselves or with others any facet whatsoever of any matter pertaining to what may tend to be pertinent to matters involved in this cause which you are sitting as jurors. With that, you may be in recess. Thank you." (Tr. 82–84)

During the recess, the court informed the defendant that she would be remanded to the custody of the sheriff until such time as a thousand dollar ($1,000) appearance bond was posted. The defendant objected to any further proceedings in the trial because of the highly prejudicial effect of the perjury charge made in the presence of the jury. The court denied defendant's motion for mistrial, advising the defendant that the jury would be admonished not to consider the proceedings. The jury was then brought back into the courtroom and admonished by the court to not consider the incident and individually questioned each juror as to whether they could still be a fair and impartial juror. The defendant renewed her motion for a mistrial which was overruled with exception allowed.

Defendant cites as authority Reed v. State, 5 Okl.Cr. 365, 114 P. 1114 and Talliaferro v. State, 20 Okl.Cr. 57, 200 P. 1068. In *Talliaferro,* supra, the court stated:

"The general rule is that the commitment of a witness for perjury, during the trial and in the presence of the jury, is prejudicial error. Notes, Swink v. State, 19 Ann.Cas. 422. Where such action amounts to an intimation of an opinion on the part of the judge as to the guilt or innocence of the defendant, a commitment of a witness for perjury in the presence of the jury is error. 26 R.C.L. 1020; Reed v. State, 5 Okl.Cr. 365, 114 P. 1114."

We are of the opinion that the instant case is distinguishable from *Reed,* supra, and *Talliaferro,* supra, in that the defendant was not actually held on the charge of perjury in the presence of the jury. However, in view of the punishment assessed, it is readily apparent that the defendant was prejudiced by the assistant district attorney announcing in the jury's presence that the State intended to file perjury charges against the defendant and requesting that she be taken into custody. The trial court promptly excused the jury and further discussion of the perjury charge was conducted outside their hearing. When court was reconvened, the trial court attempted to rectify the error by admonishing the jury to not consider the incident. It was readily apparent from the verdict that the jury was prejudiced. Because of the overwhelming evidence of defendant's guilt, we are of the opinion that a retrial of the cause would result in a finding of guilty and thus, do not deem that justice would best be served by reversing the cause.

The final proposition contends that the verdict of guilty is not supported by sufficient evidence and is contrary to law. From the foregoing statement of facts, we

are of the opinion that this proposition is without merit.

For the reasons stated in proposition one, the judgment and sentence is modified to a fine of five hundred dollars ($500) and as so Modified, the judgment and sentence is Affirmed.

BLISS, P. J., concurs.

BRETT, Judge, (concurs in results):

I concur in the results reached in this decision but only because I believe the ends of justice will be better served by the modification of sentence.