## MARK CARMICKLE v. STATE.

No. A-6891. Opinion Filed Nov. 23, 1929.
Rehearing Denied Dec. 21, 1929.
(282 Pac. 1113.)

F. W. Church, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was prosecuted in the county court of Ottawa county upon information charging the defendant, Mark Carmickle, with the crime of imputing unchastity to a female in the manner and form as follows:

"That the said Mark Carmickle then and there being did then and there, wilfully, unlawfully, falsely, maliciously and wantonly, impute to Mrs. Florence E. Shaw, a female, a want of chastity by then and there in the Chamber of Commerce office in the City of Pitcher stating orally in the presence and hearing of Frank Hills, Dr. E. Albert Aisenstadt, H. G. Knox, J. B. Lucas, Jr., O. R. Monroe, D. W. Brashear, Robert Taylor, J. H. Klinefelter, M. L. Crowe, Floyd Simmons, and M. C. Connors, as follows: to-wit: 'That Mrs. Florence E. Shaw was a Crook and a Bad woman,' then and there meaning that the said Mrs. Florence E. Shaw was unchaste contrary to the form of the Statutes in such case made and provided and against the peace and dignity of the State of Oklahoma."

The evidence of the state was that a community fund had been raised in the town of Picher for the aid of the needy; that the defendant had objected to any part of such fund being set aside for the use of the Juvenile Home in Ottawa county; that, the board of directors of the Chamber of Commerce being in session, the defendant was sent for and asked to give his reasons why he objected to the use of such funds for the Juvenile Home; that defendant answered that Mrs. Florence Shaw, the superintendent, was a bad woman and a crook.   One witness testified that he made the statement "that Mrs. Shaw was a bad woman and that she had been run out of Baxter and was forced to leave Shawnee."   The defendant testified that Mrs. Shaw had been excluded from the Salvation Army; that she had collected furniture and funds for the Salvation Army and converted the same for her

own use; that what he meant by what he said was that she was a dishonest woman; and that his statements had no reference to her chastity.

The defendant was prosecuted under section 1808, C. O. S. 1921, which reads as follows:

"If any person shall orally or otherwise, falsely and maliciously or falsely and wantonly impute to any female, married or unmarried, a want of chastity, he shall be deemed guilty of slander, and upon conviction shall be fined not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than ninety days, or by both such fine and imprisonment."

Section 1809, C. O. S. 1921, provides:

"In any prosecution under the preceding section it shall not be necessary for the state to show that such imputation was false, but the defendant may, in justification, show the truth of the imputation, and the general reputation for chastity of the female alleged."

The state proceeded upon the theory that it was only necessary to show the statements made, and that the question of what the defendant meant by such statements was one of fact to be determined by the jury from a consideration of all the facts and circumstances shown by the evidence in the case. This court has repeatedly held that, where the evidence is conflicting and there is any competent evidence before the jury to support the verdict, a new trial will not be granted for insufficient evidence. Browning v. State, 31 Okla. Cr. 373, 239 Pac. 272; Wilson v. State, 32 Okla. Cr. 139, 240 Pac. 155; Shields v. State, 32 Okla. Cr. 344, 240 Pac. 661. The question of what meaning the defendant intended to convey by the language he used was properly submitted to the jury by appropriate instructions by the court. The jury found this issue

against the defendant. There is competent evidence in the record sufficient to support the verdict of the jury.

The defendant next contends that, even if the communication should be construed to have the meaning given to it by the state, yet such communication was a privileged one, and the defendant could not therefore be held accountable criminally for such statement. The defendant contends that the question of privilege was one of law and not of fact, and that it was the duty of the court to determine as a matter of law whether such communication was privileged.

In the case of Hubbard v. Cowling, 36 Okla. 603, 129 Pac. 714, 715, this court said:

"Defendant insists that the question of privilege as urged in his answer was one of law for the court, and not of fact for the jury, and complains of the instruction given by the court to the jury, which required the jury to determine that question as one of fact. This contention cannot be sustained, and the decisions are practically uniform in holding that, where the evidence is conflicting, it is the province of the court to instruct the jury as to what facts constitute a privileged communication, and leave it for the jury to determine whether or not those facts have been established."

The court properly instructed the jury that the question of whether such communication was privileged was one of fact to be determined by them, and they were instructed that, if they found from all the facts and circumstances in the case that the communication was privileged, then it would be their duty to find the defendant not guilty. This instruction was as favorable to the defendant as he was entitled to under the law and facts in the case.

The information charging an offense and the evidence. being sufficient to support the same, the case is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.